UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

KARL F. OWEN                                          :

                   Plaintiff,             : 08 Civ. 5626 (DAB) (GWG)

      -v.-                                       : OPINION AND ORDER

NO PARKING TODAY, Inc.,                   :

                 Defendant.          :
--------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      In this lawsuit, Karl F. Owen claims that defendant No Parking Today, Inc. failed to properly pay him overtime as required by the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq., the New York State Labor Law § 190 et seq. and § 652(1), and N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.  See Complaint, filed June 23, 2008 (Docket # 1).  Owen now moves for sanctions pursuant to 28 U.S.C. § 1927 and Rule 37 of the Federal Rules of Civil Procedure on the ground that No Parking Today's president and sole shareholder, Clayton Thomas, failed to respond to Owen's discovery demands on time.  No Parking Today has cross-moved for an order compelling the deposition of plaintiff Karl Owen.[1]  We discuss each motion separately.

I.      MOTION FOR SANCTIONS

      A.     Facts

      The facts underlying the motion to compel are for the most part undisputed.  On October 27, 2008, Owen made a document request to No Parking Today.  See Plaintiff's First Request for Production of Documents, dated Oct. 27, 2008 (annexed as Ex. 3 to Affirmation of Robert David Goodstein, filed Aug. 1, 2011 (Docket # 38) ("Goodstein Affirm.")) ("First Doc. Request").

---

[1] Many of No Parking Today's papers, including the motion to compel, mistakenly refer to Owen as "Owens."

Owen requested documents containing "the names and addresses of the persons(s) [sic] who were hired or assigned to perform tasks similar to Karl F. Owen" and "all personnel and payroll records" of those persons.  Id. ¶¶ 4–5.  Owen also requested documents concerning "contracts, memorandum [sic], pay records relating and/or referring to the relationship between No Parking Today, Inc. and Consolidated Edison."  Id. ¶ 8.   In its response to the initial document request, No Parking Today stated that the request for "personnel and payroll records" for other employees was "not authorized render [sic] the law."  Answer to Plaintiff's Request for Documents, dated Dec. 9, 2008 (annexed as Ex. L to Affirmation in Opposition to Plaintiff's Motion for Sanctions and Exhibits, filed Aug. 31, 2011 (Docket # 51) ("Marino Affirm.")) ¶¶ 4, 5.

On March 5, 2010, Owen sent No Parking Today a letter explaining the deficiencies in No Parking Today's response to the discovery requests.  Letter from R. Goodstein to A. Marino, dated Mar. 5, 2010 (annexed as Ex. 4 to Goodstein Affirm.) ("Mar. 5, 2010 Letter").  In response, No Parking Today submitted a letter from Thomas providing the names of five employees who held positions similar to Owen's and explaining that "[a]ll personnel records and payroll records are being obtained from the accountant." Letter from C. Thomas to R. Goodstein, dated May 4, 2010 (annexed as Ex. 18 to Goodstein Affirm.) ("May 4, 2010 Letter") ¶¶ 4–5.  Thomas also said that he was resubmitting all of the Con Edison agreements, id. ¶¶ 7–8, and that his accountant was mailing him copies of Owen's 941, W2, and W4 forms.  First Doc. Request ¶¶ 19–21; May 4, 2010 Letter ¶¶ 14–16.

On June 7, 2010, Thomas sent No Parking Today's attorney a letter saying that he had been advised by his accountant that he needed to keep documents only for the previous three years and therefore

**we do not have any of the follow** [sic] documents covering 2004 to 2007:
5) Names, address of employees personnel and payroll.
6) Hours worked, rate, time sheets, work order, job request, time sheets or any Con Ed documents.
12) Documents covering the length of employment.
16) Contracts or weekly salary paid.
18) Deductions taken out of employees check.
19) 941's or NYS45's filed.
20) W2's, W3's or 1099misc.
21) W4's[.]
22) Computerized payrolls.
23) Names or dates of employment.

Letter from C. Thomas to A. Marino, dated June 7, 2010 (annexed as Ex. 7 to Goodstein

Affirm.) ("June 7, 2010 Letter") (emphasis in original).  Thomas's letter was apparently

forwarded to Owen's attorney and, following its receipt, Owen again sent No Parking Today a

letter explaining various ways in which No Parking Today had still not responded adequately to

the October 27, 2008 document request.  Letter from R. Goodstein to A. Marino, dated June 17,

2010 (annexed as Ex. 8 to Goodstein Affirm.) ("June 17, 2010 Letter").  In that letter, Owen

specifically asked that No Parking Today provide the names, addresses, personnel records, and

payroll records of employees who did the same work as Owen for the time period 2004 to 2007.

Id. ¶¶ 4–5.  Owen also requested that No Parking Today provide an affidavit stating that

documents covering the 2004 to 2007 time period were destroyed.  Id. ¶¶ 6, 12, 15, 18–22.

Despite No Parking Today's assertion that it had destroyed the documents from 2004 to 2007,

No Parking Today had previously produced "Daily Tracking Reports" for a couple of weeks in

2006 which specified "location, start time, employee shift, job status and job end date and time."

Mar. 5, 2010 Letter ¶ 6.

On July 12, 2010 No Parking Today's attorney sent Owen a letter stating that Owen had

been provided with "all documents which my client has in his possession."  Letter from A.

Marino to R. Goodstein, dated July 12, 2010 (annexed as Ex. 9 to Goodstein Affirm.) ("July 12, 2010 Letter") at 1.  In response to that letter, Owen asked No Parking Today to put this statement in affidavit form and to explain which documents had been destroyed.  See Email from M. Kelly to A. Marino, dated July 20, 2010 (annexed as Ex. 10 to Goodstein Affirm.); Letter from R. Goodstein to A. Marino, dated Sept. 27, 2010 (annexed as Ex. 11 to Goodstein Affirm.) ("Sept. 27, 2010 Letter"); Letter from R. Goodstein to A. Marino, dated Oct. 21, 2010 (annexed as Ex. 12 to Goodstein Affirm.) ("Oct. 21, 2010 Letter"); Letter from R. Goodstein to A. Marino, dated Oct. 29, 2010 (annexed as Ex. 13 to Goodstein Affirm.) ("Oct. 29, 2010 Letter"); Letter from R. Goodstein to A. Marino, dated Nov. 5, 2010 (annexed as Ex. 15 to Goodstein Affirm.) ("Nov. 5, 2010 Letter").  No Parking Today did not provide Owen with such an affidavit.

Thomas's first deposition was held on August 17, 2010.  See Deposition of C. Thomas, dated Aug. 17, 2010 (annexed as Ex. 1 to Goodstein Affirm.).  A second deposition was conducted on February 3, 2011.  See Deposition of C. Thomas, dated Feb. 3, 2011 (annexed as Ex. 1 to Goodstein Affirm.) ("Thomas Feb. Dep.").  During the February deposition, Thomas testified that he had documents in storage that he had not previously turned over to his attorney. Id. at 121-22.  In response to a question about why he had not turned over the documents, Thomas replied "because, to be honest, truthfully speaking, I'd be turning over tons and tons of stuff; and specifically maybe hundreds and hundreds of papers." Id. at 129–30.  Thomas admitted that he had in his possession documents concerning length of employment; W2, W3, and 1099 forms; and weekly salaries paid for employees other than Owen.  Id. at 130–132, 136–138.  Following the deposition, Owen wrote to Judge Batts informing her of the newly-disclosed documents and asking permission to move to strike the defendant's answer.  Letter from R. Goodstein to Judge Batts, dated Feb. 14, 2011 (annexed as Ex. 16 to Goodstein Affirm.)

4

("Feb. 14, 2011 Letter").  In response to that letter, Judge Batts ordered No Parking Today to respond to Owen's letter by February 18, 2011.  Order, filed Feb. 15, 2011 (Docket # 23).  No Parking Today submitted an affidavit by Thomas on February 21, 2011 stating that he had "fully complied with all the demands of [Owen's] attorney, Robert Goodstein" and that the only remaining records concerned other employees, which he could make available to Goodstein.  See Affidavit of Clayton Thomas, dated Feb. 21, 2011 (annexed as Ex. 21 to Goodstein Affirm.) ("Thomas Aff.") ¶¶ 1, 3.  Thomas also asserted that Goodstein was previously aware of the documents he had in storage.  Id. ¶ 3.  It is unclear how or when Thomas believed Goodstein became aware of the documents in storage.  There is no evidence that Goodstein was aware of the existence of these documents until Thomas revealed their existence at his February deposition.  See Thomas Feb. Dep. at 122; Feb. 14, 2011 Letter.

In response to Owen's letter to Judge Batts, No Parking Today said that Owen's attorney was free to visit the storage area and view the records himself.  Letter from A. Marino to Judge Batts, dated Feb. 24, 2011 (annexed as Ex. 17 to Goodstein Affirm.) at 2.  On June 13, 2011, No Parking Today sent this Court a letter requesting permission to "drop" boxes of records at Owen's attorney's office.  Letter from A. Marino to Judge Gorenstein, dated June 13, 2011 (annexed as Ex. B to Marino Affirm.) at 2.  In response, this Court issued an order on June 16, 2011 noting that defendant had a continuing obligation to comply with its discovery obligations, and that no legal basis existed for the Court to issue an Order granting defendant's request for permission to "drop" boxes of records at plaintiff's counsel's office.  Order, filed June 16, 2011 (Docket # 34).  Nonetheless, on June 27, 2011, Thomas began delivering storage boxes to the office of Owen's counsel.  Plaintiff's Memorandum of Law in Support of His Motion for Sanctions, filed July 29, 2010 (Docket # 37) ("Pl. Memo. of Law") at 6.  These boxes contained

5

documents dating back to 2000, although the discovery request had been for documents dated from 2004.  Id. at 7.  Included in these boxes were documents that related to Owen specifically, Goodstein Affirm. ¶¶ 39–44; documents relating to other employees, id. ¶¶ 46-48; and invoices to Con Edison.  Id. ¶ 45.

Owen has now filed the instant motion for sanctions.[2]  In his motion, Owen argues that No Parking Today has "willfully and repeatedly violated his obligation to respond to Plaintiff's duly served discovery demands, and multiple orders and directives of this Court, in a timely or responsive manner."  Pl. Memo. of Law at 1.  Owen contends that No Parking Today should be sanctioned because Thomas falsely claimed that employee time records, payroll records, work requests from Con Ed, hourly time cards, and tracking reports for 2006, 2007, and 2008 had been destroyed or were no longer in his possession.  Id. at 5; Goodstein Affirm. ¶¶ 63, 65–68.  Owen asks the Court to enter an order striking No Parking Today's answer, granting a default judgment in favor of Owen, and ordering No Parking Today to pay all costs.  Pl. Memo. of Law at 1.  In the alternative, Owen asks that "an adverse inference be drawn with respect to any documents produced after the close of discovery, and with respect to any documents requested during discovery that remain outstanding at this time."  Id. at 1, 12.

B.    Discussion

Federal Rule of Civil Procedure 37(c)(1)  provides in pertinent part that

"[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply

_____

[2] See Notice of Motion, filed Aug. 1, 2011 (Docket # 38); Pl. Memo. of Law; Goodstein Affirm.; Marino Affirm.; Memorandum of Law in Opposition to Plaintiff's Motion for Sanctions on the Respondent, filed Aug. 31, 2011 (Docket # 51) ("Opp. Memo. of Law"); Plaintiff's Reply Affirmation to Defendant's Opposition to Plaintiff's Motion for Sanctions, filed Sept. 14, 2011 (Docket # 52).

evidence on a motion, at a hearing, or at a trial, unless the failure was
substantially justified or is harmless. In addition to or instead of this sanction, the
court, on motion and after giving an opportunity to be heard: (A) may order
payment of the reasonable expenses, including attorney's fees, caused by the
failure; (B) may inform the jury of the party's failure; and (C) may impose other
appropriate sanctions, including any of the orders listed in Rule
37(b)(2)(A)(i)-(vi).

These sanctions mentioned in Rule 37(c)(1)(C) include orders "(i) directing that the matters

embraced in the order or other designated facts be taken as established for purposes of the action,

as the prevailing party claims; . . . (iii) striking pleadings in whole or in part; . . . [and] (vi)

rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A).

District courts "enjoy wide discretion in sanctioning litigants appearing before them." Novak v.

Wolpoff & Abramson LLP, 536 F.3d 175, 177 (2d Cir. 2008) (citation omitted).

It is undisputed that No Parking Today failed to produce many relevant documents in a

timely manner. See Goodstein Affirm. ¶¶ 35, 41, 44; Marino Affirm. ¶¶ 5, 8. Thomas admitted

during his deposition that he knew of the existence of the documents in storage. See Thomas Feb.

Dep. at 123. Thomas now attempts to defend his actions by stating that "[a]ll of the Owens [sic]

documents were turned over to the attorney. The only remaining boxes concerned other

employees." Thomas Aff. ¶ 3; see also Opp. Memo. of Law at 5–6 ("the most important

documents in this case for Karl Owens [sic] were his time cards and I forwarded those time cards

among others to Robert Goodstein within a reasonable time"). But Owen had been requesting the

payroll records of other employees from the very beginning, see First Doc. Request ¶¶ 4–5, and

even No Parking Today concedes that they are relevant, Opp. Memo. of Law at 5. Indeed, Owen

had specified that the failure to provide information on other employees was one of the

deficiencies in No Parking Today's discovery response. See Mar. 5, 2010 Letter ¶¶ 4, 5; June 17,

2010 Letter ¶¶ 4, 5.

It appears that Owen eventually did receive the requisite documents, albeit more than two years after the original request was made.   Owen has not provided evidence that there are any specific documents that were destroyed, however.   Accordingly, this case does not involve any issue of spoliation.[3]

In light of the fact that the documents sought were ultimately produced to plaintiff, the Court does not believe that a default judgment is warranted.   See, e.g., Convolve, Inc. v. Compaq Computer Corp., 223 F.R.D. 162, 169-70 (S.D.N.Y. 2004) (appropriate remedy when some information was not timely produced was to require full disclosure of relevant information). Many of the cases cited by Owen in support of his request for sanctions can be distinguished based on the severity of the violation or are otherwise inapplicable.   See, e.g., Burke v. ITT Auto., Inc., 139 F.R.D. 24, 33–35 (W.D.N.Y. 1991) (striking answer after defendant "persistently violated orders of the court" and sanction of attorney's fees had already been awarded); Update Art, Inc. v. Modiin Pub., Ltd., 843 F.2d 67, 68, 72 (2d Cir. 1988) (upholding preclusive sanction after party had been warned multiple times that sanctions would be imposed if it continued to violate discovery orders); Worldcom Network Serv., Inc. v. Metro Access, Inc., 205 F.R.D. 136, 143–44 (S.D.N.Y. 2002) (default not appropriate where failures were attributable only to counsel); Hollingsworth v. City of New York, 1997 WL 91286, at * 3 (S.D.N.Y. March 4, 1997).

---

[3]  Owen has not provided evidence that there remain specific documents or categories of documents in Thomas's possession that remain unproduced.   Although Owen points to documents that Thomas was supposed to request from third parties, Goodstein Affirm. ¶¶ 49–57, this is not enough to support sanctions.   See Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 138 (2d Cir. 2007) ("[A] party is not obliged to produce, at the risk of sanctions, documents that it does not possess.").   Owen also claims that No Parking Today has not produced documents from Thomas's computer hard drive. See Goodstein Affirm. ¶¶ 58–62.  However, Owen does not give any indication of what undisclosed documents might be on the hard drive, whether they are relevant to his case, or whether they differ from the documents that have been produced in hard copy.   See id.

But even though a default judgment is not appropriate in this case, No Parking Today's behavior does merit the imposition of sanctions inasmuch as No Parking Today repeatedly failed to respond fully to Owen's discovery requests and misled plaintiff as to the nature of the search it had conducted.  No Parking Today frequently engaged in evasive or untruthful behavior to avoid responding fully to the discovery requests.  Thomas falsely stated that many of the ultimately produced documents had been destroyed.  See June 7, 2010 Letter.  Thomas also tried to deflect some document requests by stating that Owen would have to ask Thomas's accountant, Marcus Hilton, for the information.  See Letter from A. Marino to Judge Batts, dated May 3, 2010 (annexed as Ex. 6 to Goodstein Affirm.); May 4, 2010 Letter.  But Hilton stated in a deposition that he does not keep payroll documents; rather records are generally "returned to the client as per AICPA [American Institute of Certified Public Accountants] guidelines."  Deposition of Marcus Hilton, dated June 22, 2011 (annexed as Ex. 22 to Goodstein Affirm.) at 10.  Hilton testified that he had "no original records of [No Parking Today].  All [of No Parking Today's] records are in the possession of [No Parking Today]."  Id. at 12.  The accountant also stated that he could not recall having any discussion about "any timeline as to how long [Thomas] had to keep payroll records."  Id. at 31.

Although Owen has received the relevant documents, he was still harmed by No Parking Today's failure to cooperate.  First, Owen was forced to proceed with Thomas's deposition before receiving necessary documents.  See Pl. Memo. of Law at 9.  Therefore, to restore Owen to the position he would have been in absent No Parking Today's discovery failure, the Court will permit Owen to depose Thomas again as to any issues raised by the newly-produced documents. The costs of this deposition shall be borne by the defendant because his wrongful behavior necessitated the extra deposition.  See generally In re September 11th Liability Insurance

9

Coverage Cases, 243 F.R.D. 114, 132 (S.D.N.Y. 2007) ("Rule 37 sanctions are intended to restore

the parties to the position they would have occupied but for the breach of discovery

obligations."); cf. West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999) (in

spoliation context, sanction should be designed to deter parties from engaging in the wrongful

conduct and restore the prejudiced party to the same position he would have been in absent the

wrongdoing).

Second, No Parking Today's recalcitrance in responding to the discovery requests forced

Owen to bear additional attorney's fees.  Owen made numerous written requests to both No

Parking Today's counsel and the Court in an attempt to resolve the issues.  See, e.g., March 5,

2010 Letter; Letter from R. Goodstein to Judge Batts, dated Apr. 21, 2010 (annexed as Ex. 5 to

Goodstein Affirm.); June 17, 2010 Letter; Sept. 27, 2010 Letter; Oct. 21, 2010 Letter; Nov. 5,

2010 Letter.  Throughout this period, No Parking Today asserted that all documents had been

disclosed or destroyed, see June 7, 2010 Letter; July 12, 2010 Letter, before finally admitting that

such documents did in fact exist, Thomas Feb. Dep. at 122, 123, 129–32.  Furthermore, when the

documents were finally produced, No Parking Today did not try to ensure that only relevant

documents would be produced but instead produced numerous irrelevant documents.  See

Goodstein Affirm. ¶¶ 35–37.  Therefore, in addition to being compensated for the extra

deposition, the Court will award a monetary sanction to plaintiff to compensate for any extra

attorney's fees that Owen was forced to incur due to No Parking Today's failure to comply with

the discovery requests.  This sanction will include the expenses Owen incurred to make repeated

requests and inquiry of Thomas relating to the documents, for Owen to make applications to the

Court to obtain the documents, for Owen to depose Thomas's accountant to determine what

documents belonging to Thomas were in his possession, and for Owen to separate out the

10

irrelevant documents that were contained in the storage bins Thomas delivered to Owen's attorney.  Owen may present these costs to the Court at the same time that he presents his request for costs following any re-deposition of Thomas.[4]

Finally, we do not reach Owen's request for an "adverse inference" instruction inasmuch as he does not discuss this request in this motion papers and does not articulate what specific instruction he is seeking.

II.    MOTION TO COMPEL

On January 22, 2011, Judge Batts issued an order stating that "all" discovery was to be completed by February 15, 2011 and that there would be "no further extensions." See Memorandum Endorsement, filed Jan. 26, 2011 (Docket # 22) ("Memo. Endorsement").  After plaintiff raised the issue of Thomas's testimony and his request for sanctions, this Court held a conference with the parties on March 25, 2011.  During that conference, there was repeated reference to the fact that the discovery period had already terminated.  See Transcript, filed June 14, 2011 (Docket # 32) at 5, 6, 8.  Nonetheless, because of defendant's discovery failure, the Court allowed plaintiff to depose Thomas and No Parking Today's accountant solely to support a motion for sanctions.  The Court then issued an order noting that all discovery had been concluded and that the only discovery that was being permitted were the depositions plaintiff wished to take to provide facts to support his sanctions motion. See Order, filed Mar. 25, 2011 (Docket # 29).  During the March 25, 2011 conference, the defendant made no reference to any

_____

[4] Any application that seeks attorney's fees should identify the number of hours allocated to each task for which compensation is sought.  Additionally, the application should be accompanied by contemporaneous time records (or summaries thereof) reflecting the date, the hours expended, and the nature of the work done.  See N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983); accord Scott v. City of New York, 626 F.3d 130, 132 (2d Cir. 2010).

11

additional discovery that remained outstanding.  Nor did he seek any relief from the Court's order specifying that limited discovery would be permitted.

Defendant makes no argument that any act of plaintiff prevented him from taking the deposition of plaintiff by the February 15, 2011 deadline.  Counsel for No Parking Today simply states that the parties had agreed that the defendant's deposition would take place first.  Affirmation of Amelio P. Marino, filed Aug. 11, 2011 (Docket # 43) ¶ 5.  But the defendant's deposition occurred several days before the end of the discovery period and thus plaintiff's deposition could have been scheduled to take place within the deadline.  Moreover, the request for an extension that resulted in the February 15 deadline was made on behalf of both parties and it was represented in the request that Thomas's deposition was the "final" deposition.  See Memo. Endorsement.

More fundamentally, defendant provides no explanation as to why it waited until almost six months after the discovery deadline to make the motion.  A party ordinarily must file a motion to compel before the close of discovery and if it fails to do so, the motion will be deemed untimely.  See Lane v. Lucent Techs., Inc., 2007 WL 2079879, at *3 (M.D.N.C. 2007); accord Days Inn Worldwide, Inc. v. Sonia Invs., 237 F.R.D. 395, 397–98 (N.D. Tex. 2006) (collecting cases).  Defendant's motion thus fails for this reason alone.  Finally, having been the sole source of the significant delays in this case since the original discovery deadline of February 15, 2011, and having been inexcusably delinquent and misleading in complying with its own discovery obligations, defendant is in no position to call upon the discretion of the Court to impose a new discovery burden on plaintiff.

III.     CONCLUSION

For the foregoing reasons, plaintiff's motion for sanctions is granted in part and the

12

motion to compel (Docket # 42) is denied.

If plaintiff wishes to depose Thomas again, he shall do so within 14 days of the date of this Opinion and Order.  Any application by plaintiff for a monetary sanction permitted by this Opinion and Order shall be submitted within 21 days of the date of this Opinion and Order. Defendant may respond within 7 days thereafter.

Dated: October 19, 2011
      New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

13